**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**WARREN REDLICH; RITA REDLICH;** and
**DAVID R. BRADLEY,**

                    **Plaintiffs,**              **1:10-cv-570**
                                                 **(GLS/RFT)**

              **v.**

**MARK S. OCHS,** in his official capacity as
Chief Attorney for the Committee on
Professional Standards for the App. Div. of the
NY Supreme Ct. 3rd Dept.; **JAMES L.
CHIVERS,** in his official capacity as
Chairperson for the Comm. on Professional
Standards for the App. Div. of the NY Supreme
Ct., Third Dept.; **ANTHONY V. CARDONA,**
Presiding Justice of the Appellate Division,
Third Department; and **MICHAEL PHILIP, JR.,**
Deputy Chief Attorney for the Committee on
Professional Standards,

                    **Defendants.**
_____

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Redlich Law Firm                    WARREN REDLICH, ESQ.
255 Washington Avenue Ext.
Suite 108
Albany, NY 12205

**FOR THE DEFENDANTS:**
HON. ERIC T. SCHNEIDERMAN           DAVID B. ROBERTS
New York State Attorney General     Assistant Attorney General
The Capitol
Albany, NY 12224

**Gary L. Sharpe**
**District Court Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiffs Warren Redlich, Rita Redlich (Mrs. Redlich), and David R.

Bradley commenced this action under 42 U.S.C. § 1983, alleging violations

of their federal constitutional rights in connection with Warren Redlich being

disciplined pursuant to the New York Disciplinary Rules of the Lawyer's

Code of Professional Responsibility.[1]  (Dkt. Nos. 1, 10.)  Pending are

defendants' motion to dismiss plaintiffs' amended complaint pursuant to

FED. R. CIV. P. 12(b)(1) and (6), (Dkt. No. 12), and plaintiffs' cross-motion to

_____

[1]Effective April 1, 2009, following the events relevant here, the New
York Code of Professional Responsibility was superseded by the Rules of
Professional Conduct.  *See* 22 N.Y. COMP. CODES R. & REGS. § 1200.  As
part of that transition, the statutory location and titles of the rules have
changed.  *Compare, e.g.*, Disciplinary Rule (DR) 2-101(a)(1) at 22 N.Y.
COMP. CODES R. & REGS. § 1200.6(a)(1), *with* Rule of Professional
Conduct 7.1(a)(1) at 22 N.Y. COMP. CODES R. & REGS. § 1200.0.
However, because the substance of the rules relevant here has not
changed, the court will—for ease of reference and consistent with
designations used in the underlying state court proceedings and in the
parties' submissions—refer to the relevant rules by their prior titles (e.g.,
DR 2-101(a)(1)), but will cite to their new statutory locations (e.g., 22 N.Y.
COMP. CODES R. & REGS. § 1200.0, 7.1(a)(1)).

amend their amended complaint pursuant to FED. R. CIV. P. 15, (Dkt. No. 15).  For the reasons that follow, defendants' motion is granted, and plaintiffs' cross-motion is denied.

## II. Background

Plaintiff Warren Redlich is an attorney licensed to practice law in New York State.  (Am. Compl. ¶ 3, Dkt. No. 10.)  Redlich is the founder of the Redlich Law Firm, which has an office in Albany, New York, and employs three attorneys who represent clients in personal injury, traffic tickets, DWI, and other criminal charges.  (*Id.* at ¶ 4.)  The Redlich Law Firm communicates its services to the public through the website http://www.redlichlaw.com.  (*Id.*)

In January 2008, Redlich was sworn in as a Town Board Member in the Town of Guilderland, New York.  (*Id.* at ¶ 15.)  In February 2008, Donald Csaposs, a Guilderland Democratic Appointee, wrote a letter to the Committee on Professional Standards for the Third Department,[2] alleging

---

[2]New York State's Appellate Division is authorized to investigate complaints of and discipline attorneys for professional misconduct.  *See* N.Y. JUD. LAW § 90(2).  Each of the four departments comprising the Appellate Division has appointed one or more grievance committees to carry out these duties.  *See* 22 N.Y. COMP. CODES R. & REGS. §§ 603.4, 691.4, 806.3, 1022.19.  The Committee on Professional Standards is the grievance committee for the Third Department.  *See id.* § 806.3(a).

that Redlich's status as a Town Board member should disqualify him from appearing in the Guilderland Town Court.  (*Id.* at ¶ 17.)  Shortly thereafter, Judge Thomas Breslin, Supervising Judge of the Criminal Court for the Third Judicial District of New York, received letters from the Albany County District Attorney's Office and Guilderland Town Attorney Richard J. Sherwood, which also expressed the opinion that Redlich should be disqualified from appearing in Guilderland Town Court in light of his role as a Town Board member.  (*See id.* at ¶¶ 16-20.)  On April 11, in response to these letters, Judge Breslin wrote to Judge Philip Caponera, Chairman of the Committee on Professional Standards, questioning whether it was appropriate for Redlich to appear in Guilderland Town Court given his new role with the Guilderland Town Board.  (*Id.* at ¶¶ 21, 22; Pls. Ex. 4, Dkt. No. 1.)  On April 17, aware of this inquiry, Redlich also wrote to Judge Caponera, stating there was no conflict with the Redlich Law Firm representing clients in the Town of Guilderland.  (Am. Compl. ¶ 23, Dkt. No. 10.)  In response, Michael Philip, Jr., Deputy Chief Attorney for the Committee, sent a letter to Redlich, calling his attention to a New York State Bar Ethics Opinion relating to conflicts of interest and requesting that Redlich provide a written position regarding the opinion within ten days.

(*Id.* at ¶ 24; Pls. Ex. 6, Dkt. No. 1.)  Redlich responded to Philip's letter on

May 28, 2008, communicating his position that the opinion did not

disqualify the members of his firm from appearing in Guilderland Town

Court.  (Am. Compl. ¶ 25, Dkt. No. 10; Pls. Ex. 7, Dkt. No. 1.)

      In the midst of investigating the alleged conflict of interest, the

Committee initiated a "Chief Attorney's Inquiry" against Redlich pursuant to

22 N.Y. COMP. CODES R. & REGS. § 806.4(a).[3]  (Am. Compl. ¶ 27, Dkt. No.

10.)  The Inquiry was based on the suspicion that the Redlich Law Firm's

website contained advertising that did not comply with the relevant

provisions of the Code of Professional Responsibility.  (*Id.* at ¶ 28; Pls. Ex.

9, Dkt. No. 1.)  The Committee notified Redlich of the Inquiry and

requested that he submit a written response, which Redlich did on

December 3, 2008.  (Am. Compl. ¶ 29, Dkt. No. 10; Pls. Ex. 10, Dkt. No. 1.)

      On February 5, 2009, after completing its investigation of the alleged

conflict of interest and website concerns, the Committee issued a "letter of

---

      [3]The Committee may commence an investigation of professional
misconduct "through the chief attorney, upon receipt of a specific
complaint, or by the committee on its own motion."  22 N.Y. COMP. CODES
R. & REGS. § 806.4(a).  "Prior to initiating an investigation on its own
motion, the committee shall file as part of its record a written inquiry,
signed by the chief attorney, which inquiry shall serve as the basis for
such investigation."  *Id.*

caution,"[4] finding that the Redlich Law Firm should be precluded from taking on representation of clients appearing before the Guilderland Town Court, and that the firm's website failed to comply with certain disciplinary rules.  (Am. Compl. ¶ 32, Dkt. No. 10; Pls. Ex. 13, Dkt. No. 1.)  With respect to the firm's website advertising, the Committee found that Redlich had failed in a number of instances to provide the specific disclaimers required under the rules, and that the website contained representations that were impermissibly misleading, oversimplifications, or exaggerations.  (*Id.*)

The next day, Redlich sought the Committee's reconsideration of the letter of caution, which was granted on February 12.  (Am. Compl. ¶¶ 33, 34, Dkt. No. 10.)  As part of the reconsideration process, Redlich was permitted to submit his objections in writing and to personally appear before the Executive Committee of the Committee on Professional Standards to argue his case.  (*Id.* at ¶¶ 33-38; Pls. Exs. 14-18, Dkt. No. 1.) After Redlich submitted his objections, which sought further clarification

------

[4]"If, after an investigation, the committee determines that a complaint warrants action, it may ... issue a letter of caution, if the acts of misconduct have been so established and the committee determines in light of all the circumstances that the misconduct is not serious enough to warrant either commencement of a disciplinary proceeding or imposition of an admonition."  22 N.Y. COMP. CODES R. & REGS. § 806.4(c)(iii).

with respect to his firm's website advertising deficiencies, defendant Philip provided Redlich, on March 12, with a list of the statements the Committee deemed to be in violation of the disciplinary rules.  (Am. Compl. at ¶¶ 35-36, Dkt. No. 10.)  Ultimately, after submitting an additional letter in support of the website and personally appearing before the Executive Committee, Redlich received an amended letter of caution on June 1, 2009.  (*Id.* at ¶¶ 37-40.)

Not satisfied with the amended letter, Redlich sought further review by the Appellate Division, Third Department, by motion dated June 24, 2009.  (*Id.* at ¶ 43.)  In support of that motion, Redlich provided an affidavit, with supporting exhibits, contending that the advertising statements cited by the Committee did not violate the relevant disciplinary rules, and that the Committee erred with respect to their conflict of interest findings.  (*Id.* at ¶ 41; Pls. Ex. 21, Dkt. No. 1; Philip Aff. ¶ 9, Ex. I, Dkt. No. 12:3.)  In response, the Committee submitted an affidavit in opposition, along with attached exhibits.  (*See* Philip Aff. ¶ 10, Ex. J, Dkt. No. 12:3.)

On October 1, the Appellate Division granted Redlich's motion in part, vacating the June 1 letter of caution, but directing the Committee to issue a revised letter of caution with the specific text annexed to the decision.  (Am.

Compl. ¶ 42, Dkt. No. 10; Philip Aff. ¶ 11, Ex. K, Dkt. No. 12:3.)  The letter

annexed to the Appellate Division's Order is identical to the June 1 letter

except that it adds: (1) a sentence clarifying the specific disciplinary rules

and New York State Ethics Opinions supporting the Committee's conflict

findings; and (2) a reference to the examples of statements that were

misleading, oversimplifications, or exaggerations as set forth in Philip's

March 12 letter to Redlich.  (Philip Aff. ¶ 11, Ex. K, Dkt. No. 12:3.)

In accordance with the court's order, the revised letter of caution was

issued to Redlich on October 14.  (Am. Compl. ¶ 43, Dkt. No. 10; Pls. Ex.

23, Dkt. No. 1.)  The letter stated that Redlich and the members of his firm

were engaged in conflicts of interest.  (*See* Pls. Ex. 23, Dkt. No. 1.)

Specifically, it advised him that neither he nor the members of his firm

could represent clients who had been charged with traffic violations or

other criminal offenses before the Guilderland Town Court because of

Redlich's role as a member of the Town Board, which carried with it

budgetary authority over the Town Court, the Guilderland Police

Department, and the Town Attorney's Office.  (*See id.*)  Such

representation was found to be a violation of Disciplinary Rule (DR) 1-

102(a)(5) and New York State Bar Association (NYSBA) Ethics Opinions

#692 and #798.[5]  (*See id.*)  The letter further stated that the Redlich Law

Firm's website failed to comply with the relevant disciplinary rules, finding

that it contained statements not accompanied by the disclaimer "[p]rior

results do not guarantee a similar outcome," as mandated by DR 1-

101(e)(3), and that certain other statements were misleading,

oversimplifications, or exaggerations, in violation of DR 2-101(a)(1).[6]  (*Id.*)

_____

[5]DR 1-102(a)(5) provides that "[a] lawyer or law firm shall not ... [e]ngage in conduct that is prejudicial to the administration of justice."  22 N.Y. COMP. CODES R. & REGS. § 1200.0, 8.4(d).  Ethics Opinion # 692 holds that "a lawyer who is a member of a municipal legislature that has budgetary or appointment authority over law enforcement authorities may not take on a criminal defense engagement that requires the lawyer to be adverse to such authorities," noting that "[a]ccepting such an engagement would be prejudicial to the administration of justice."  NYSBA Comm. on Prof'l Ethics, Formal Op. 692, at 3-4 (1976) (citing, inter alia, DR 1-102(a)(5)).  Similarly, Ethics Opinion # 798 holds that "[a] lawyer who is a member of a county legislature may not undertake criminal representation in cases involving members of a police department or district attorney's office over which the legislature has budget or appointment authority."  NYSBA Comm. on Prof'l Ethics, Formal Op. 798, at 5 (2006).  The opinion further holds that "[i]f the lawyer/legislator is employed by a law firm, the lawyers in the firm are not automatically disqualified from undertaking cases that the lawyer/legislator could not accept, but imputed disqualification may be appropriate where members of the public are likely to suspect that the lawyer/legislator's influence will have an effect on the prosecution of the case."  *Id.*

[6]DR 2-101(a)(1) provides that "[a] lawyer or law firm shall not use or disseminate or participate in the use or dissemination of any advertisement that ... contains statements or claims that are false, deceptive or misleading."  22 N.Y. COMP. CODES R. & REGS. § 1200.0,

9

With respect to these latter statements, the letter, as noted above, referred to the examples set forth in Philip's March 12 letter to Redlich.  (*Id.*)

Based on these determinations, Redlich and plaintiffs David R. Bradley and Mrs. Redlich commenced this action on May 14, 2010, and filed an amended complaint on June 17, 2010.  (Dkt. Nos. 1, 10.)  Redlich claims that the Committee's decision with respect to his firm's website advertising violated his First Amendment right to engage in truthful commercial speech, that the proceedings leading to the Committee's decision were procedurally deficient under the Fourteenth Amendment, and that the disciplinary rules underpinning the Committee's decision are unconstitutionally vague.  (*See* Am. Compl. ¶¶ 45-61, 91-95, 97, Dkt. No. 10.)  Plaintiffs Mrs. Redlich and Bradley[7] claim that the Committee's decision infringed on their Sixth Amendment rights insofar as they (and

_____

7.1(a)(1).

[7]According to the amended complaint, plaintiff Rita Redlich, an Albany County resident, is the mother of Redlich, has been a client of the Redlich Law Firm in the past, including for a traffic ticket, and drives in Guilderland frequently.  (Am. Compl. at ¶ 5, Dkt. No. 10.)  Plaintiff David R. Bradley, also an Albany County resident, "was a client of the Redlich Law Firm in 2007, with a Guilderland Town Court[, and] was also a Guilderland High School teacher for many years, with Mr. Redlich as one of his students."  (*Id.* at ¶ 6.)

others similarly situated) cannot be represented by the Redlich Law Firm in certain proceedings before the Guilderland Town Court as long as Redlich is a member of the Town Board.  (*See id.* at ¶¶ 62-90.)  In addition, plaintiffs claim that the disciplinary rules underlying the Committee's determination "are vague and allow for arbitrary enforcement."  (*Id.* at ¶ 97.)

Plaintiffs have asserted these claims against Mark S. Ochs, Chief Attorney for the Committee on Professional Standards for the Supreme Court, Appellate Division, Third Judicial Department; James L. Chivers, chairperson for the Committee; Michael Philip Jr., Deputy Chief Attorney of the Committee; and Anthony V. Cardona, Presiding Justice of the Appellate Division, Third Department.  (*Id.* at ¶¶ 7-10.)

With respect to relief, plaintiffs seek (1) "a permanent injunction against enforcement of the relevant Disciplinary Rules"; (2) "an injunction directing Defendants to rescind the Letter of Caution to Mr. Redlich"; (3) "a declaratory judgment, under the Sixth and Fourteenth Amendments, that people facing charges in Guilderland Town Court, such as Mr. Bradley and Mrs. Redlich, may retain the Redlich Law Firm to represent them"; and (4) "a declaratory judgment, under the First and Fourteenth Amendments, that

11

the Redlich Law Firm website is protected commercial speech and that Defendants' allegations about the website are insufficient to overcome First Amendment protection." (*Id.* at ¶¶ 98(A)-(E).)  Defendants have moved to dismiss plaintiffs' amended complaint, and plaintiffs have cross-moved to amend their amended complaint.  (Dkt. Nos. 12, 15.)

### III. **Standard of Review**

The standards for judgment pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) are well established and will not be repeated here.  For a full discussion of the standards, the court refers the parties to its previous opinions in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 217-18 (N.D.N.Y. 2010) (Rule 12(b)(6)), and *Hunt v. United States*, No. 1:07-CV-0112, 2007 WL 2406912, at *1 (N.D.N.Y. Aug. 21, 2007) (Rule 12(b)(1)).

### IV. **Discussion**

#### A. **Rule 12(b)(1) Motion**

#### 1. **Standing**

Defendants argue that Bradley and Mrs. Redlich lack standing to assert their Sixth Amendment claims because the injury they allege they *could* suffer—i.e., being precluded from hiring the Redlich Law Firm to

12

represent them in certain proceedings before the Guilderland Town Court—is too speculative and remote to present an actionable "case or controversy." (*See* Defs. Mem. of Law at 17, Dkt. No. 12:5.)  The court agrees.  The amended complaint fails to allege that either Mrs. Redlich or Bradley have "sustained or [are] immediately in danger of sustaining some direct injury as the result of the challenged official conduct," as is required to demonstrate standing and invoke this court's jurisdiction.  *City of Los Angeles  v. Lyons*, 461 U.S. 95, 101-02 (1983) (citations and internal quotation marks omitted).  Bradley, for example, a former Redlich Law Firm client who lives near and drives frequently within the Town of Guilderland, contends only that "*[i]f* he were to be ticketed again in Guilderland, he would want to have the option to retain the Redlich Law Firm for any such tickets."  (Am. Compl. ¶¶ 6, 64, Dkt. No. 10 (emphasis added).)  Similarly, Mrs. Redlich alleges only that "she drives frequently within the Town of Guilderland and has been represented in the past on a traffic ticket by the Redlich Law Firm."  (*Id.* at ¶ 66.)  These allegations, which are "conjectural or hypothetical" at best, fall short of demonstrating the type of "real and immediate" injury or threat of injury required to demonstrate standing.  *Lyons*, 461 U.S. at 102; *see also, e.g.*, *id.* at 111-12 (finding that the

13

possibility that the plaintiffs might in the future violate a law, get arrested, and be subjected to a chokehold by the arresting officer was too remote to confer them with standing to challenge the City's chokehold policy.) Accordingly, the amended complaint is dismissed insofar as Bradley and Mrs. Redlich assert claims for violations of their Sixth Amendment rights.

## 2.    *Rooker-Feldman* Doctrine

Defendants also seek dismissal of Redlich's First Amendment cause of action for lack of subject matter jurisdiction, arguing that plaintiffs' claims are barred under the *Rooker-Feldman* doctrine.  (*See* Defs. Mem. of Law at 12-16, Dkt. No. 12:5.)  The court agrees in part.

The *Rooker-Feldman* doctrine derives from the principle that "lower federal courts lack jurisdiction to engage in appellate review of state-court determinations."  *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 21 (1987) (Brennan, J., concurring); *see also Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) (noting that the *Rooker-Feldman* doctrine "seeks to prevent state and federal courts from fighting each other for control of a particular case" (citation and internal quotation marks omitted)).  In essence, the doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments ... and inviting district court review and

rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

In this Circuit, the *Rooker-Feldman* doctrine bars a plaintiff's claims if four conditions are satisfied. *See Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). First, the plaintiff in the federal action must have lost in state court. *Id.* Second, the plaintiff must complain of injuries caused by the state-court judgment. *Id.* Third, the plaintiff must invite district court review and rejection of that judgment. *Id.* And fourth, the plaintiff must have commenced the district court proceedings after the state-court judgment was rendered. *Id.*

Here, it is clear that Redlich "lost" in the underlying disciplinary proceedings, and that the current action was commenced after the decision resulting from those proceedings was issued. It is also apparent—and Redlich does not appear to dispute—that the First Amendment challenge complains of injuries caused by, and invites review and rejection of, the decision that his law firm's website contained statements that were "misleading or oversimplifications or exaggerations" in violation of DR 2-101(a)(1). Specifically, Redlich alleges that the disciplinary findings were "false and outrageous"; that the statements at issue were not actually

misleading, oversimplifications, or exaggerations; that the statements had "no potential to confuse or deceive consumers"; and that DR 2-101(a)(1) has not been enforced against numerous other offending websites, apparently claiming that the rule's enforcement against him was unfair, arbitrary, or ill-motivated.  In addition, with respect to injury other than the alleged violation of his First Amendment rights, Redlich claims that changing his firm's website to conform to the disciplinary findings "will significantly impair the firm's ability to market its services and retain clients."  (*Id.* at ¶¶ 51, 53.)  And ultimately, to remedy his alleged injuries, Redlich claims he is entitled to a declaratory judgment that "Redlich Law Firm website is protected commercial speech and that Defendants' allegations about the website are insufficient to overcome First Amendment protection."  (*Id.* at ¶¶ 51, 53, 98(A)-(E), Dkt. No. 10.)

Even when viewing these allegations in a light most favorable to Redlich, there can be no question that they directly challenge and seek reversal of the underlying disciplinary decision.  *See Zimmerman v. Grievance Comm. of Fifth Judicial Dist.*, 726 F.2d 85, 86-87 (2d Cir. 1984) (holding that "when [a plaintiff] challenges the Appellate Division's decision because it construed the advertising rule's ban on 'deceptive' and

'misleading' statements to bar [certain statements], he is complaining about a construction of the rule given in an adjudication of the grievance against him," and his claim is therefore barred under *Rooker-Feldman*).  Redlich contends, however, that *Rooker-Feldman* is inapplicable to his First Amendment claim because the underlying "state proceeding was not 'judicial in nature,'" and therefore he is not challenging a "state-court judgment."  (*See* Pls. Mem. of Law at 3-5, Dkt. No. 16.)  The court disagrees.

It is clear in this Circuit that "[d]isciplinary proceedings before the New York Appellate Division are judicial in nature."  *Zimmerman*, 726 F.2d at 86 (citations omitted).  The Second Circuit has also recognized that bar association grievance committees, such as the Third Department's Committee on Professional Standards, act as "quasi-judicial ... arm[s] of the Appellate Division," and that the proceedings before those committees "constitute[] ... judicial proceeding[s]."  *Anonymous v. Ass'n of the Bar of the City of N.Y.*, 515 F.2d 427, 433 (2d Cir. 1975) (citation and internal quotation marks omitted); *see also Vozzo v. Nolan*, Civil Action No. 05-01336, 2007 WL 2403369, at *3 (N.D.N.Y. Aug. 20, 2007) (stating that "[a] proceeding before an Attorney Grievance Committee constitutes a

17

judicial proceeding" (citation omitted)).  Moreover, in the court's view, even

if the Committee proceedings and findings were "administrative" in nature

as Redlich contends, *Rooker-Feldman* would still apply since the Appellate

Division reviewed and upheld the Committee's decision to issue the letter

of caution, directing the Committee to re-issue the same letter with only

slight modifications.  *See Birmingham v. Ogden*, 70 F. Supp. 2d 353, 362–

365 (S.D.N.Y. 1999) (finding persuasive the reasoning that *Rooker-*

*Feldman* applies where a state court has upheld an agency's administrative

findings, "because a challenge to th[at] agency's decision necessarily

involves a challenge to the judgment of the state court" (citation and

internal quotation marks omitted)).  Accordingly, the court rejects Redlich's

argument with respect to the nature of the challenged proceedings.

In further opposition to defendants' *Rooker-Feldman* argument,

Redlich also appears to argue that *Rooker-Feldman* does not bar his First

Amendment claim in its entirety because "[he] challenges not merely the

application of a rule but the rule itself."  (*See* Pl. Mem. of Law at 2, Dkt. No.

16.)  It is true that *Rooker-Feldman* does not affect a federal court's

jurisdiction to entertain "general challenge[s] to state bar rules."

*Hachamovitch v. DeBuono*, 159 F.3d 687, 694 (2d Cir. 1998) (citation and

internal quotation marks omitted).  Thus, to the extent Redlich's First
Amendment claim could be construed to *also* assert a facial challenge to
DR 1-201(a)(1), that portion of the claim is not barred under *Rooker-
Feldman* and therefore survives defendants' Rule 12(b)(1) motion.
Whether Redlich's complaint does indeed state a facial First Amendment
challenge sufficient to avoid Rule 12(b)(6) dismissal, however, is an entirely
different matter and will be discussed below.  Accordingly, except to the
extent that Redlich's First Amendment claim could be construed to assert a
facial challenge to DR 1-201(a)(1), the claim is dismissed for lack of subject
matter jurisdiction.

**B.    Rule 12(b)(6) Motion**

**1.    First Amendment Facial Challenge**

As just explained, Redlich's First Amendment commercial speech
challenge to DR 2-101(a)(1) can survive only insofar as it can be construed
to assert a facial challenge to that rule.  In that regard, and as also noted
above, Redlich claims in a characteristically cursory fashion that "[he]
challenges not merely the application of a rule but the rule itself."  (*See* Pl.
Mem. of Law at 2, Dkt. No. 16.)  But even to the extent that Redlich's First
Amendment allegations could be strained to broadly contend that DR 2-

19

101(a)(1) is facially invalid, those allegations fail to adequately plead a facial challenge.

With exceptions not applicable here, pleading "an adequate facial challenge to the constitutionality of a law" requires a plaintiff to "allege facts that, if proven, would 'establish that no set of circumstances exists under which the challenged [law] would be valid.'"  *Schick v. Apker*, No. 07 Civ. 5775, 2009 WL 2016926, at *3 (S.D.N.Y. July 10, 2009) (quoting *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 110 (2d Cir. 2003)).  Thus, for Redlich to adequately plead a facial challenge to DR 2-101(a)(1) on the grounds that it violates attorneys' First Amendment commercial speech rights, he must allege facts that, if proven, would establish that the rule cannot operate under any circumstances without violating those rights. Redlich has not alleged such facts.

As Redlich acknowledges, commercial speech is protected under the First Amendment insofar as it is not "false, deceptive, or misleading." *Zauderer v. Office of Disciplinary Counsel of Sup. Ct.*, 471 U.S. 626, 638 (1985) ("The States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading, or that proposes an illegal transaction." (citations omitted)); *Cent. Hudson*

*Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 566 (1980) ("For commercial speech to [be protected under the First Amendment], it at least must concern lawful activity and not be misleading.").  The rule at issue in this case, DR 2-101(a)(1), prohibits a lawyer or law firm from "us[ing] or disseminat[ing] or participat[ing] in the use or dissemination of any advertisement that ... contains statements or claims that are false, deceptive or misleading."  22 N.Y. COMP. CODES R. & REGS. § 1200.0, 7.1(a)(1).  Therefore, because the state clearly has the power to ban all false, deceptive, and misleading advertising, Redlich cannot establish that DR 2-101(a)(1), a rule proscribing just that type of advertising, can never be constitutionally applied.  Accordingly, to the extent that Redlich's first cause of action could be construed as asserting a facial challenge to DR 2-101(a)(1), that claim is dismissed.  And consequently, given the court's prior dismissal of Redlich's as-applied First Amendment challenge, his First Amendment cause of action is dismissed in its entirety.

## 2.    Vagueness

In a single sentence, the amended complaint alleges that the disciplinary rules underlying the Appellate Division's disciplinary decision are unconstitutionally "vague and allow for arbitrary and discriminatory

enforcement." (Am. Compl. ¶ 97, Dkt. No. 10.) Defendants seek dismissal of this claim, arguing that plaintiffs have failed to state a vagueness claim for which relief can be granted. (*See* Defs. Mem. of Law at 18-24, Dkt. No. 12:5.) The court agrees.

Where a plaintiff challenges the facial validity of a regulation on vagueness grounds, he must show that the regulation "is expressed in terms of such generality that 'no standard of conduct is specified at all.'" *Brache v. County of Westchester*, 658 F.2d 47, 51 (2d Cir. 1981) (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)); *see id.* at 50 ("A [regulation] is unconstitutionally vague on its face only when it cannot validly be applied to any conduct." (citations omitted)). Thus, "the threshold for a facial vagueness claim requires that a plaintiff plead not just that the language of the statute creates an imprecise standard, but rather that it creates no standard at all." *City of New Rochelle v. Town of Mamaroneck*, 111 F. Supp. 2d 353, 367 (S.D.N.Y. 2000) (citing *United States v. Schneiderman*, 968 F.2d 1564, 1567 (2d Cir. 1992)). Here, Redlich's inartfully-drawn pleading does not allege facts suggesting that the challenged disciplinary rules are so indefinite as to specify no standard of conduct at all. Rather, the thrust of the amended complaint is that the

22

Appellate Division chose to enforce the rules against Redlich, and not others, based on Redlich's political affiliation.  (*See* Am. Compl. ¶¶ 16, 18, 19, 21 (highlighting political affiliations of those involved with disciplinary proceedings), ¶¶ 55-56, 76-88 (alleging that disciplinary investigation and decision was "based upon the fact that Mr. Redlich is part of the Republican Minority in the Town of Guilderland"), Dkt. No. 10.)  But even if these allegations are true, and the Appellate Division did choose to enforce the rules against Redlich based on his Republican status, that fact does not demonstrate that the disciplinary rules themselves are so vague that they cannot be validly applied to any conduct or that they fail to give sufficient notice of the range of prohibited conduct.  This is especially so in this context since the rules at issue "apply only to lawyers, who are professionals and have the benefit of guidance provided by case law, court rules, and the lore of the profession."  *Howell v. State Bar of Tex.*, 843 F.2d 205, 208 (5th Cir. 1988) (citation omitted) (explaining that "[t]he particular context in which a regulation is promulgated ... is all important" in determining whether a regulation is unconstitutionally vague (citing *Am. Commc'ns Ass'n v. Douds*, 339 U.S. 382, 412 (1950)); *see also Villeneuve v. Connecticut*, Civil No. 3:10cv296, 2010 WL 4976001, at *5 (D. Conn.

Dec. 2, 2010)

(citing *Howell* and recognizing same).  Accordingly, because the amended

complaint fails to allege facts plausibly suggesting the facial invalidity of the

disciplinary rules on vagueness grounds, it is dismissed insofar as it

attempts to assert such a claim.

### 3.    Procedural Due Process

Defendants seek dismissal of Redlich's claim that he was deprived of

procedural due process during the proceedings leading up to the issuance

of the October 14 letter of caution, arguing that Redlich received all the

process that was constitutionally due.  As defendants correctly observe in

their reply memorandum, Redlich has failed to respond to defendants'

argument in this regard.  Given that failure, "[d]efendants' burden with

regard to its motion is lightened such that, in order to succeed, it need only

show its entitlement to the relief requested in its motion, which has

appropriately been characterized as a 'modest' burden."  *Dottolo v. Byrne*

*Dairy, Inc.*, 5:08-CV-0390, 2010 WL 2560551, at *7 (N.D.N.Y. June 22,

2010) (citing, inter alia, N.D.N.Y. L.R. 7.1(b)(3)).  For the reasons

articulated in defendants' memorandum, (*see* Defs. Mem. of Law at 26-28,

Dkt. No. 12:5), the court finds that defendants have met this lightened

burden and therefore dismisses Redlich's procedural due process claim.

## C.   Cross-Motion to Amend

Plaintiffs have cross-moved to amend the amended complaint in two respects. (*See* Dkt. No. 15.) First, with the clear intention of overcoming the standing hurdle discussed above, plaintiffs wish to amend their complaint to allege that Mrs. Redlich has received a parking ticket in the Town of Guilderland, which is now pending in Guilderland Town Court. (Redlich Aff. ¶¶ 3, 5, Dkt. No. 15:1.) Mrs. Redlich would like Redlich to represent her in connection with this ticket, and claims that the disciplinary decision denying her that opportunity violates her Sixth Amendment right to counsel. (*Id.* at 7.) With respect to the second basis of amendment, plaintiffs wish to join as plaintiff William Russell, a former client of the Redlich Law Firm, who has asked Redlich to represent him in a criminal case pending in Guilderland Town Court.[8] (*Id.* at ¶¶ 8-12.) As with Mrs.

---

[8]The court notes that while William Russell has already been listed as a plaintiff on the docket, that listing was apparently made in error, as neither the original complaint nor the amended complaint designate Mr. Russell as such. (*See* Compl. ¶¶ 3-10, Dkt. No. 1; Am. Compl. ¶¶ 3-10, Dkt. No. 10.) Only in the proposed second amended complaint is Mr. Russell named as a plaintiff, and even there his name is highlighted and underscored so as to indicate a change from the prior pleadings. (*See* Proposed 2d Am. Compl., Dkt. No. 15:2.)

Redlich, Mr. Russell claims that his inability to hire Redlich violates his Sixth Amendment right to counsel.  (*Id.* at 10-12.)

Federal Rule of Civil Procedure 15(a) provides that where a party seeks to amend his pleading before trial, "[t]he court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2).  However, a motion to amend is properly denied where amendment would be futile. *See Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987)  "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead*, 282 F.3d 83, 88 (2d Cir. 2002) (citation omitted).  Accordingly, where the plaintiff submits a proposed amended complaint, "the district judge may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted."  *Ricciuti v. N.Y. City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

The court agrees with defendants that plaintiffs' cross-motion to amend should be denied as futile.  With respect to Mrs. Redlich, while the proposed amendment would likely remedy the standing deficiencies discussed above, it would do nothing to cure what the court perceives as

an otherwise meritless Sixth Amendment claim.  And for the same reasons,

permitting Mr. Russell to now allege an identical Sixth Amendment claim

would likewise be futile.  While it is true that the Sixth Amendment does

protect a criminal defendant's choice of counsel, that right is not absolute.

*See Wheat v. United States*, 486 U.S. 153, 159 (1988).  Indeed, as the

Supreme Court has explained, the right to chosen representation properly

gives way where that representation presents an actual conflict of interest

or the serious potential for conflict.  *Id.* at 164.

In this case, as already explained, the Appellate Division determined

that Redlich and the three-attorney law firm bearing his name are

precluded from representing certain clients in the Guilderland Town Court

based on the conflict of interest arising from Redlich's role as a member of

the Guilderland Town Board.  Without reference to any relevant authority,

in line with his seeming effort to keep his submission scant and unhelpful,[9]

---

[9]Mr. Redlich continues to display an apparent disregard for the time
and resources that this court must expend in interpreting his poorly-drafted
pleadings and analyzing his sloppily-constructed and thinly-researched
memoranda.  Whether this disregard stems from laziness, incompetence,
bad faith, or some combination thereof, Mr. Redlich should be mindful in
drafting future submissions that the court's patience has worn thin, and
that he would be best served in reevaluating and adjusting his current
methods of operation accordingly.

and based on nothing more than allegations that the Appellate Division has failed to enforce the conflict of interest rules against other attorneys engaged in conflicts, Redlich appears to argue that this court should disregard the Appellate Division's conflict findings, re-examine the facts underlying those findings, and make its own findings as to whether and to what extent a conflict of interest truly exists with respect to Mrs. Redlich and Mr. Russell.  (*See* Pls. Mem. of Law at 5-7, Dkt. No. 16.)  Absent citation to any cogent authority compelling otherwise, the court rejects Redlich's unsupported invitation to engage in this type of case-by-case collateral review of a state courts' disciplinary findings and conclusions.  *Cf. Anonymous*, 515 F.2d at 432 (recognizing in the context of *Younger* abstention that "[t]oday more than ever, the integrity of the bar is of public concern and the state which licenses those who practice in its courts, and which is the only body that can impose sanctions upon those admitted to practice in its courts, should not be deterred or diverted from the venture by the interloping of a federal court ").  Therefore, in light of the conflict found to exist—a finding the court discerns no basis to disturb—the court finds that neither Mrs. Redlich nor Mr. Russell have a Sixth Amendment right to be represented by Redlich or his firm as alleged, and that their Sixth

Amendment claims therefore fail to state a claim for which relief may be granted.  Accordingly, plaintiffs' cross-motion to amend the complaint is denied.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 12) is **GRANTED** and plaintiffs' amended complaint (Dkt. No. 10) is **DISMISSED**; and it is further

**ORDERED** that plaintiffs' cross-motion to amend (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 24, 2011
Albany, New York

Gary L. Sharpe
U.S. District Judge

29